

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Twentieth Century Fox Film Corporation, SFM Entertainment, LLC, and Newline Home Video, Inc.,<br>       Plaintiffs,<br>       v.<br>Dastar Corporation, Entertainment Distributing, and Marathon Music & Video,<br>       Defendants.<br><br>Dastar Corporation,<br>       Counterclaimant,<br>       v.<br>Twentieth Century Fox Film Corporation, SFM Entertainment, LLC, Newline Home Video, Inc., and Random House sued as Doubleday,<br>       Counterdefendants. | CV 98-7189 FMC (Ex)<br><br>**ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFFS AND COUNTERDEFENDANTS AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, MOTION TO DISMISS.** |



## I. Introduction/ Procedural History

Plaintiffs, Twentieth Century Fox Film, SFM Entertainment, and New Line Home

✓ Docketed<br>5 Copies (NTC Sent)<br>NO JS - 5 / JS - 6<br>___ JS - 2 / JS - 3<br>___ CLSD

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

1

JAN 0 6 2000

123.

Video, asserted claims for copyright infringement,[1] reverse passing off under the Lanham

Act and unfair competition under California law against Defendants Dastar Corporation,

Entertainment Distributing and Marathon Music and Video. This lawsuit is based on the

Defendants' distribution of a video series entitled *Campaign in Europe* which Plaintiffs claim

is an infringement of the protected material found in the book, *Crusade in Europe,* ("the

Book") by General Dwight D. Eisenhower and is an appropriation of the television series

*Crusade in Europe* without proper credit. Additional facts are described in Part IV.

Defendants moved for summary judgment or, in the alternative, for dismissal of

plaintiffs' claims for lack of standing. Plaintiffs filed a cross-motion for summary

adjudication on their claims for copyright infringement, reverse passing off and unfair

competition and on defendants' counterclaims for declaratory relief and unfair competition.

Random House, sued as Doubleday, joined plaintiffs' motion for summary adjudication on

the counterclaims. The parties' motions are pending before the Court.


## II. Defendants' Requests to Strike Plaintiffs' Evidence

In the course of briefing on these motions, Defendants filed three requests to strike

---

[1] 17 U.S.C. § 501(b) states in part: "The legal or beneficial owner of an exclusive right
under a copyright is entitled, subject to the requirements of section 411, to institute an action for
any infringement of that particular right committed while he or she is the owner of it."
Defendants do not dispute Plaintiffs standing to sue for copyright infringement as the exclusive
licensee and sublicensees under Doubleday's copyright in the Book. *See Eden Toys Inc. v.
Florelee Undergarment Co. Inc.*, 697 F.2d 27, 36 (2nd Cir. 1982) (if copyright owner granted
exclusive license, licensee may sue for infringement in its own name without joining owner).

portions of the Plaintiffs's submissions.[2]  Two were aimed at the admissibility of nearly

every piece of Plaintiffs' evidence offered in support of their motion for summary

adjudication.  The third was a motion to strike under Rule 11 alleging that Plaintiffs had

incorrectly cited two cases in their reply brief.  Because defendants' evidentiary arguments

relate to the findings of undisputed fact in Part IV, the Court addresses defendants' claims

at the outset.

## A. Documents from the McCormick Collection and the Eisenhower Library

Plaintiffs have submitted documents from the McCormick collection at the Library

of Congress and the Eisenhower Presidential Library as evidence in support of their motion.

Defendants object to these documents on two grounds: failure to disclose and hearsay.

Defendants contend that the documents are inadmissible because plaintiffs did not

---

[2] The Court notes that on November 17, 1999, the Honorable Dickran Tevrizian ordered
no further briefing on either plaintiffs' or defendants' motions after the plaintiffs' filing of their
reply in support of their cross-motion for summary judgment on December 6, 1999.  Although
the case has been transferred to this Court, the previous orders are in full effect.

Both parties have filed documents well after the deadline.  The Court agrees with
plaintiffs that portions of defendants' filings on December 13, 1999, contain argument
appropriate only in a timely filed brief.  However, because Federal Rule of Evidence 56(e)
requires admissible evidence, defendants are entitled to challenge the admissibility of the
evidence offered by plaintiffs in their reply.  On the same grounds, the Court considers plaintiffs'
response to the defendants' evidentiary challenges.  The Court resolves these evidentiary matters
as explained in text.

However, the Court strikes defendants' Summary of Oral Argument filed December 21,
1999.  The Court is fully aware of the numerous filings on the cross-motions for summary
judgment; defendants' additional filing adds only to the volume of paper they have already
submitted.  Moreover, the filing violates the Court's order of November 17, 1999.  Plaintiffs'
filing on December 22, 1999, is similarly disregarded.

On December 28, 1999, defendants' filed a document entitled "Suggestions on Oral
Argument by Defendants."  Parties are not permitted to respond in writing to the Court's
tentative order.  The Court strikes defendants' "Suggestions."

disclose the documents until they were filed in the course of the summary judgment papers. Defendants argue that the belated disclosure violates Local Rule 6.2.2 which imposes a continuing duty on parties to disclose all documents "contemplated to be used." A party who, without substantial justification, fails to disclose information is not permitted to use the information at trial or in support of a motion unless such failure is harmless. Fed. R. Civ. P. 37(c)(1).

Plaintiffs contend there is no violation of the local rules because the documents retrieved from the presidential library were neither responsive to defendants' discovery request nor contemplated for use until they learned of the arguments made in the defendants' motion for summary judgment. Plaintiffs' declaration with respect to their contemplated use and disclosure in their opposition to defendants' motion is sufficient under Local Rule 6.2.2. The documents from the McCormick collection were not retrieved until after October 20, 1999. In the midst of summary judgment filings, disclosure less than one month after receipt of documents is sufficient under Rule 6.2.2.

Defendants also object to all of the documents from both collections on the grounds that they are hearsay. Plaintiffs assert that they are admissible as ancient documents. Federal Rule of Evidence 803(16) provides an exception to the hearsay rule for documents at least twenty years old, if they are properly authenticated. An ancient document is authenticated under Rule 901(8) if it (1) is in such condition as to create no suspicion concerning its authenticity; (2) was in a place where it, if authentic, would likely be; and (3) has been in existence twenty years or more at the time offered. The Court finds that the documents from

4

the McCormick collection and the Eisenhower Library meet the requirements for authentication pursuant to Rule 901(8). Each is in sufficient condition to avoid suspicion; is identified as a document in either the Library of Congress' collection or the Eisenhower Library; and contains a date or other information demonstrating that the document has been in existence more than twenty years. Accordingly, these documents are admissible as exceptions to the hearsay rule. Defendants' objections to Exhibits A-Z to Powers' declaration are overruled. Defendants' objections to Exhibits A-K to Jahss' declaration are overruled.

B. Declarations and Remaining Exhibits

1. Feinstein and Unsigned Declaration of Levathes

Defendants object on hearsay grounds to the declaration of Feinstein which relayed Feinstein's conversation with Levathes who was unable to sign his declaration due to illness. The Court will consider only the recently filed signed declaration by Levathes. The Defendants' objections to the declaration of Feinstein and the unsigned declaration of Levathes are sustained.

2. Levathes' Signed Declaration

Defendants also object to Levathes' signed declaration stating that plaintiffs failed to disclose Levathes as a witness. Plaintiffs respond that they did not discover Levathes until October 28, 1999. The Court agrees with plaintiffs that their disclosure of Levathes' testimony shortly thereafter is sufficient under Rule 6.2.2. Defendants object to several paragraphs of Levathes' declaration. Paragraph two states that "People looked to movie

5

theaters in those days as a major source of their news." Defendants object for lack of foundation. Whether or not Levathes, who worked in the movie industry at the time, has sufficient personal knowledge, the statement is irrelevant to the issues before the Court. The sentence is not admissible. Paragraph four states that Levathes believed Fox should get into television because it would be a major vehicle for news programming. Defendants object based on relevance and lack of foundation. This statement of Levathes' belief is relevant to his motivation in urging Fox to develop the series for television based on the Book. Levathes certainly has personal knowledge of his own state of mind. Defendants next object to the statement that "Mr. Skouras told me to explore the idea" as hearsay. A statement is not hearsay if it is not offered for the truth of the statement. Whether or not Skouras made the statement, it explains Levathes' motivation for pursuing the project for Fox. Defendants' objections to paragraph four are overruled. Defendants' objection to paragraph five is based on their argument that Levathes' declaration as to his state of mind is without foundation and is irrelevant. It is relevant to the issue of the television series being an accurate reflection of the Book and is clearly within Levathes' personal knowledge. Defendants object to paragraph six on the grounds that it contains "conclusionary statements." Paragraph six contains factual statements of the steps Levathes took to secure the television rights from Doubleday. Defendants' objection is overruled. Levathes' statement that he "informed Time during negotiations that the *Crusade in Europe* television series . . . had to be faithful to the book" is admissible hearsay under Rule of Evidence 803(3). It is "[a] statement of the declarant's then existing state of mind . . . such as intent, plan, motive, design" . . . .F. R. E.

803(3).  Levathes' description of portions of the agreements between Fox and Doubleday
which are attached as exhibits is also permissible.  Finally, defendants object to paragraphs
nine, ten and eleven for lack of foundation.  These paragraphs detail Levathes' role in
adapting the Book into the series, the agreement for payment and the use of the text of the
Book are based on Levathes' personal knowledge and, accordingly,  have sufficient
foundation.  Defendants' objections are overruled.

   3. Declaration of Moger

   Defendants object to portions of Moger's declaration on several different grounds.
The Court overrules defendants' objections for the following reasons.  The sentence objected
to as conclusory contains statements of fact within the personal knowledge of Moger.  The
objection to the use of the word "restored" as ambiguous in the third paragraph is fully
explained in the remaining part of that paragraph.  Declarant has sufficient personal
knowledge as foundation to explain the condition of the film received from Time.  Declarant
does not relay hearsay in paragraph four.  Paragraphs five to seventeen are relevant to
establishing SFM's role in the creation of the *Crusade in Europe* videos.  Moger's statements
that he was "outraged" are not the proper subject of a declaration and will be disregarded by
the Court.

   Defendants object to exhibits A, B and C attached to Moger's declaration on the
grounds that they were not disclosed.  Plaintiffs' respond that they did not contemplate using
exhibit A until the motions for summary judgment were filed and that exhibits B and C were
disclosed in plaintiffs' initial disclosures.  As explained above, only documents a party

contemplates using are required to be disclosed under Local Rule 6.2.2. The Court finds that

exhibit B was attached to plaintiffs' original complaint as exhibit I and that exhibit C was

attached as exhibit H. The Court notes that the original exhibit markings remain on the

copies attached to Moger's declaration and are readily apparent. Defendants' objections to

exhibits A, B and C to Moger's declaration are overruled.

    4. Declaration of John Eisenhower

    Defendants objections to Eisenhower's statements on the grounds that he lacks

personal knowledge and that the statements therefore lack foundation are overruled. The

Court finds that Eisenhower's declaration contains sufficient facts of his dealings with his

father and his familiarity with his father's affairs to provide ample foundation and personal

knowledge to support his statements in paragraphs five, six, seven, eight, nine, ten and

eleven. Two sentences contain speculative statements about the secretaries provided to

General Eisenhower and the number of changes made by Doubleday to the General's book.

Plaintiffs' assert that these statements are permissible under Federal Rule of Evidence 701.

The Court finds that the statements meet the provisions of that Rule because (1) they are

rationally based on the perception of Eisenhower and (2) they are helpful. Eisenhower's

statement based on his conversation with his father in paragraph six falls within the residual

exception to hearsay because the statement is evidence of a material fact, is probative and is

reliable. Federal Rule of Evidence 807. Defendants objection to Eisenhower's statement

that he believes the family does not have a right to renew the Book's copyright because it

belongs to Doubleday is sustained.

5. Declaration of Vaughan

Defendants object to much of Vaughan's declaration on the grounds that the statements are not based on personal knowledge and lack foundation. The Court finds that Vaughan's statements about his experience working at Doubleday beginning in 1952, in combination with his working relationships with Doubleday executives and General Eisenhower, provide sufficient personal knowledge and foundation for his declaration. Vaughan's statements that General Eisenhower "welcomed" Doubleday's assistance and that the book would not have been published without Doubleday's urging are based on the knowledge he obtained from his relationship with General Eisenhower; they are not speculative. These statements are based on hearsay but fall within the residual hearsay exception because they are evidence of material facts, probative and reliable. Fed. R. Evid. 807. Defendants' objections to Vaughan's declaration based on lack of foundation and personal knowledge are overruled. Defendants' objections based on relevance are sustained with respect to Vaughan's statement that copyrights are the "legal and financial stock-in-trade" of publishing and Vaughan's belief that defendants' challenge to the copyright is "ironic." Lines 5:23-26, 6:1-4.

6. Exhibit A to the Declaration of Reed

Defendants objected to the copy of *Crusade in Europe* and the face page of the Book, filed as Exhibit A, because plaintiffs disclosed a different edition to the book. The Court finds no basis for excluding the exhibit on this ground. The objection is overruled.

7. Exhibits F and H to the Supplemental Declaration of Jahss

9

Defendants object to exhibits F and H on the grounds that they were not disclosed and are hearsay. Exhibit F is the introduction to General Eisenhower's book *At Ease: Stories I Tell To Friends*. General Eisenhower's own words in this book fall within the residual hearsay exception because they are evidence of a material fact, probative and most certainly reliable. Fed. R. Evid. 807. Rule 807 requires a party offering evidence under this rule to provide the adverse party with sufficient notice. Defendants argued at oral argument that the filing of this evidence with plaintiffs' reply was insufficient notice. Defendants further argued that because they were not permitted to file any papers after plaintiffs' reply, the evidence is inadmissible. Defendants certainly could have requested leave to respond to plaintiffs' new evidence. Moreover, the Court's order precluding filings after plaintiffs' reply did not stop defendants from filing several other objections to plaintiffs' evidence after that date. The introduction to *At Ease* was provided to defendants with sufficient notice. Defendants objections are overruled.

Exhibit H is an excerpt from a journal *Columbia Library Columns* which details General Eisenhower's path to becoming the University's president. The single sentence of the article that is relevant to this case is "The horrible demands of his new position dismayed the General, according to the *New York Herald Tribune's* Bill Robinson, who would be instrumental with Doug Black in publishing *Crusade in Europe*." Jahss Supp. Declaration, Ex. H at 59. Even though defendants' objection to the article is sustained, the involvement of Black and Robinson in persuading General Eisenhower to write the Book is established by other evidence.

10

C. Rule 11

The Court denies Defendants' request to strike Plaintiffs' reply memorandum under Federal Rule of Civil Procedure 11. Defendants contend that Plaintiffs' incorrectly cited two cases to the Court. The Court finds that Plaintiffs' citation to *Comedy III Productions, Inc. v. New Line Cinema* does not violate Rule 11. *Comedy III* does contain the statement, albeit in dicta, that the exploitation of an item in the public domain may be cognizable under the Lanham act. The Court also finds that Plaintiffs' citation to *Lamothe v. Atlantic Recording Corporation* as a general statement of standing under the Lanham act does not violate Rule 11.

### III. Summary Judgment/ Summary Adjudication Standard

Summary judgment or summary adjudication is only proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response,

11

by affidavits or as otherwise provided in this rule, must set forth specific facts showing that

there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere disagreement or the bald

assertion that a genuine issue of material fact exists does not preclude the use of summary

judgment. *Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989).


## IV. Uncontroverted Facts

Each set of moving parties filed a Statement of Uncontroverted Facts. Defendants

responded to the vast majority of plaintiffs' statement by disputing the admissibility of the

evidence on which the asserted facts were based. The Court's ruling on the admissibility of

the evidence is discussed in Part II. Defendants' evidentiary arguments do not meet the

requirement that parties "identify with reasonable particularity" evidence supporting their

contentions that material facts are disputed. *See Keenan v. Allen*, 91 F.3d 1275, 1279 (9th

Cir. 1996). To the extent defendants identified evidence allegedly contradicting plaintiffs'

remaining facts, they pointed only to entire documents as support, i.e., "depositions of Tarter

and Andersen." (Defendants' response to plaintiffs' Statement of Uncontroverted Facts

paras. 82, 84, 85.) Citation to an entire deposition is not "reasonable particularity" and is

insufficient to dispute plaintiffs' factual contentions. The Court may assume the material

facts as claimed and supported by plaintiffs are admitted to exist absent evidence filed by

defendants to controvert those facts. Local Rule 7.14.3. To the extent the Court finds the

plaintiffs' facts relevant to this motion, they are stated below.

Defendants' Statement of Uncontroverted Fact contains, in large part, legal argument,

i.e., "The fact that in the thirty-one (31) initial 1948 registrations . . . DOUBLEDAY did not identify itself as the author with the work being 'a work for hire' is compelling evidence that the General Eisenhower work, *Crusade in Europe*, was not a work for hire at that time, and was not contemplated by the parties to be a work for hire." (Defs. Statement of Uncontroverted Fact para. 21) Defendants also recite allegations found in plaintiffs' complaint and the responses to those allegations filed in the answer. The Court observes, as the Ninth Circuit did in *Keenan*, that defendants' "counsel certainly cannot be accused of remaining silent, but by submitting [a document] that obfuscates rather than promotes an understanding of the facts, [counsel] has assisted neither the court nor [the] clients." 91 F.3d at 1279. To the extent defendants' statement contains uncontroverted facts helpful to the Court, they are stated below.

THE BOOK

1. As early as 1944, General Eisenhower was asked to write his memoirs of his War experience by book publishers including Doubleday. (Power Decl. Exh. A).

2. Although the General initially rejected the proposals, he was approached by Douglas Black of Doubleday and William Robinson of the New York *Herald Tribune* about writing his memoir to convey his personal, first-hand experience of the war. Black convinced Eisenhower that only his account could dispel inaccurate reports found in other books. (Jahss Supp. Decl. Ex. F, Vaughan Decl., J. Eisenhower Decl.).

3. In December of 1947, Eisenhower sought tax advice from the Department of Treasury stating that he had been "urged" by publishers to write his war memoirs. (Jahss

13

Decl. Ex. F)

4. By January of 1948, General Eisenhower began discussing with Doubleday editor in chief Ken McCormick and William Robinson of the *Herald Tribune* the preparation and the content of the Book. (Power Decl. Ex. J, Jahss Decl. Ex. P)

5. On February 8, 1948, General Eisenhower began writing the Book. (Jahss Supp. Decl. Ex F).

6. Ken McCormick supervised the "necessary work in connection with the preparation of the manuscript." (Jahss Decl. Ex. P)  Joe Barnes, editor at the *New York Herald Tribune*, also assisted in editing the manuscript. (Jahss' Decl. Ex. R)

7. Doubleday hired several others to assist with the Book including Kevin McCann, Doug Wallop, and John Kennedy.  (Power Decl. Ex. H)  Wallop and Kennedy served as secretaries who transcribed and typed the manuscript.  (Powers Decl. Ex. G, H, I)  Arthur Nevins was hired to check historical facts and add notations to the manuscript.  (Powers Decl. P)  Doubleday paid the salaries and the expenses of each of these individuals.  (Power Decl. H, P, S).

8. On December 8, 1948, General Eisenhower signed an agreement acknowledging the sale of the Book and "all rights of every nature pertaining thereto" to Doubleday for the sum of $635,000. (Jahss Decl. Ex. L)

9. Doubleday worked on the promotion and manufacture of the Book long before the Eisenhower/Doubleday contract was executed and the Book was published including developing printing specifications and marketing plan. (Jahss Decl. Ex. W, Power Decl. Exs

14

V, Z)

10. Doubleday published the Book on November 22, 1948. The first thirty excerpts appeared in the November 7, 1948, edition of the *Herald Tribune*. (Jahss Decl. Y, Power Decl. Exs. I, W)

11. Doubleday obtained certificates of registration for the copyrights to the Book and the *Herald Tribune* excerpts in 1948. Doubleday was listed as the copyright claimant. (Jahss Decl. Exs. Z, AA)

12. In 1975, Doubleday renewed the copyrights as the "proprietor of copyright in a work made for hire." (Jahss Decl. Exs. BB, CC)

THE *CRUSADE* SERIES

13. In 1948, Doubleday granted to Twentieth Century Fox Television Productions, Inc., the sole and exclusive television rights in the Book. (Plaintiffs' Statement of Uncontroverted Facts para. 46. Defendants did not provide evidence to contradict this fact.)

14. Peter Levathes, Vice President of Twentieth Century Fox, arranged and oversaw the production of the television series to be made from the Book. (Plaintiffs' Statement of Uncontroverted Facts para. 47. Defendants did not provide evidence to contradict this fact.)

15. Levathes negotiated an agreement with Time Incorporated to produce the series titled *Crusade in Europe*. The agreement provides that the *Crusade in Europe* series must be based upon or illustrate the Book. (Plaintiffs' Statement of Uncontroverted Facts paras. 47, 50. Defendants did not provide evidence to contradict this fact.)

16. In 1988, Fox reacquired the television rights in the Book from Doubleday

including the exclusive right to distribute on video the *Crusade* television series. (Plaintiffs'
Statements of Uncontroverted Facts paras. 58, 59. Defendants did not provide evidence to
contradict this fact.)

17. In 1988, Fox granted to SFM Entertainment the right to act as its exclusive sales
agent and distributor of the *Crusade* series in all media, including video, and to sublicense
others to do the same. SFM in turn granted exclusive license to distribute the *Crusade* series
to Embassy Home Entertainment and thus to New Line Home Video. (Embassy Home
Entertainment's successor in interest). (Plaintiffs' Statement of Uncontroverted Facts para.
62. Defendants did not provide evidence to contradict this fact.) SFM located the negatives
of the original *Crusade* television series, had them restored and reproduced for sale on video.
SFM spent approximately $75,000 in restoring the series. (Plaintiffs' Statement of
Uncontroverted Facts paras. 65, 67, 71. Defendants did not provide evidence to contradict
this fact.)

18. The *Crusade* video series is a direct reproduction of the *Crusade* television series.
(Plaintiffs' Statement of Uncontroverted Facts para. 72. Defendants did not provide evidence
to contradict this fact.)

19. The credits of the *Crusade* videos include New Line Home Video, SFM, "A
March of Time Production By Arrangement with 20th Century Fox" and "Eisenhower's
Crusade in Europe Based on the Book by Dwight D. Eisenhower." (Plaintiffs' Statement of
Uncontroverted Facts para. 73. Defendants did not provide evidence to contradict this fact.)
THE *CAMPAIGN* SERIES

16

20. Dastar began producing videos in 1995. At that time, Norman Andersen was president of Dastar and, beginning in September of 1995, Lanny Tarter was Dastar's director of video acquisitions. (Plaintiffs' Statement of Uncontroverted Facts paras. 77-78. Defendants did not provide evidence to contradict these facts.)

21. To create *Campaigns*, Tarter purchased eight beta cam tapes of the *Crusade* television series of sufficient quality so as to be able to reproduce them *en masse*. (Plaintiffs' Statement of Uncontroverted Facts paras. 82-83. Defendants did not provide evidence to contradict these facts.)

22. Tarter copied the *Crusade* series in its entirety to make *Campaigns*. He then substituted a new opening title sequence, credit page and final closing for the original versions that appeared in the *Crusade* series; substituted 26 new chapter-title sequences; deleted any references to the Book including images of the Book (approximately twenty minutes of footage); added music; and moved the *Crusade*'s recap to the beginning. (Plaintiffs' Statement of Uncontroverted Facts para. 84. Defendants Statement of Uncontroverted Facts para 70.)

23. The credits for *Campaigns* identify Anderson as executive producer, Barbara Kaye as associate producer and Tarter as producer. (Plaintiffs' Statement of Uncontroverted Facts para. 100. Defendants did not provide evidence to contradict these facts.)

24. The Book and the *Campaign* video series are organized around the same six subjects: (1) the build-up of United States armed forces before World War II and the entry of the U.S. into the War; (2) the Allied campaign in North Africa; (3) the Allied Campaign

in Italy; (4) the Allied campaigns in France and Germany leading to victory in Europe; (5)

the involvement of Russia in the War in Europe; and (6) the post-war period. (Reed Decl.

Para 7) ( Plaintiffs' Statement of Uncontroverted Facts para. 92. Defendants did not provide

evidence to contradict this fact.)

25. The sequencing of the topics in the Book is roughly the same as that in

*Campaigns*; many of the same topics are juxtaposed and recounted in the same order, and the

overall presentation of the War is the same. (Reed Decl. Ex. C) ( Plaintiffs' Statement of

Uncontroverted Facts para. 97. Defendants did not provide evidence to contradict this fact.)

26. The Book tells General Eisenhower's personal story of World War II and is

organized around his personal experiences and perspectives. *Campaigns,* in truncated form,

repeats General Eisenhower's personal story, following the same route as the Book. (Reed

Decl. Para 9) ( Plaintiffs' Statement of Uncontroverted Facts para. 95-96. Defendants did

not provide evidence to contradict this fact.)

27. *Campaigns* contains text from the Book. There are 853 sentences in the Book that

appear in *Campaigns*; 244 pages of the Book, or 51.2%, contain text directly copied or

closely paraphrased in *Campaigns;* and 2,211 lines of text out of an approximate total of

19,000 lines (11.6%) contain text directly copied or closely paraphrased in *Campaigns.*

(Reed Decl. Para. 5) The Court notes defendants' assertion disputing this statement of fact.

However, defendants bald assertion that four percent of the Book appears in the *Campaign*

videos, much of which is historical fact, without pointing to admissible evidence is

insufficient to dispute plaintiffs' statement.

## V. Plaintiffs' Motion for Summary Adjudication

Plaintiffs argue that they are entitled to summary adjudication on their claims for

copyright infringement, reverse passing off and unfair competition under California law.

They also seek summary adjudication on defendants counterclaims.

A. Copyright Infringement

To prevail on their claim for copyright infringement plaintiffs must demonstrate both

ownership of the copyright of the Book by Doubleday and unauthorized copying of protected

elements of the work by defendants. *CDN Inc. v. Kapes*, _ F. 3d _, 1999 WL 1080177 (9th

Cir. Dec. 2, 1999); *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990).

1. Ownership of the Copyright

The ownership of the copyright in this case turns on whether Eisenhower wrote the

Book as a "work for hire" for Doubleday.  If it is a work for hire, Doubleday, as the

proprietor, was authorized to renew the copyright and continues to hold a valid copyright.

If the book was not a work for hire, the right to renew the copyright belongs only to General

Eisenhower's heirs.  There is no dispute that Doubleday renewed the copyright as the

proprietor of the original copyright.

Under the 1909 Copyright Act, proprietorship of a work made for hire belongs to the

person at whose "instance" and "expense" it was created.  "[W]hen one person engages

another, whether as employee or as an independent contractor, to produce a work of an

artistic nature, [sic] in the absence of an express contractual reservation of the copyright in

19

the artist, the presumption arises that the mutual intent of the parties is that the title to the copyright shall be in the person at whose instance and expense the work is done." *Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298, 300 (9th Cir. 1965); *see also May v. Morganelli-Heumann & Associates*, 618 F.2d 1363, 1368 n.4 (9th Cir. 1980).[3] Although the Ninth Circuit has not identified a specific test for evaluating the "instance and expense" of creating a work, it has frequently cited case law from the Second Circuit as a source of the standard.

The "instance" prong of the test is met where "the motivating factor in producing the work was the employer." *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 554 (2nd Cir. 1995). The evidence demonstrates that, of the many publishers who encouraged the General to write his memoirs at the end of the Second World War, only Douglas Black of Doubleday and William Robinson of the New York *Herald Tribune* convinced General Eisenhower that his personal, first-hand experience of the war was necessary. (Finding of Fact 2) In light of the evidence that General Eisenhower had rejected previous offers to publish, the Court finds

---

[3] Defendants asserted at oral argument that without a showing that Doubleday had the right to supervise and control Eisenhower's work, the Court cannot conclude that the Book was a work for hire. Defendants point only to Second Circuit law for this additional requirement. This Court may properly look to another circuit for guidance where there is a vacuum of authority. However, the Court is not authorized to import an additional test currently required by the Second Circuit, but not the Ninth.

Even if plaintiffs were required to establish that Doubleday had the right to supervise and control Eisenhower's work, the Court finds sufficient evidence on these points. First, it is undisputed that editors from Doubleday discussed with Eisenhower the content and format of the Book as early as January of 1948. An editorial team from Doubleday and the *Herald Tribune* edited the entire manuscript. The fact-checker hired and paid by Doubleday stated that he offered suggestions for modifications and additions to Eisenhower where the original draft did not conform with historical facts. (Power's Decl. Ex. P) Finally, John Eisenhower stated in his declaration that the Book reflects changes made by Doubleday's editorial staff. (Eisenhower Decl. para.8, 10)

that the "instance" prong of the test is met because Black and Doubleday were the "motivating factor" behind General Eisenhower writing the Book.

The "expense" requirement is met where a hiring party pays an independent contractor a sum certain for his or her work in contrast to paying royalties. *See Playboy*, 53 F.3d at 555; *Yardley v. Houghton Mifflin Co. Inc.*, 108 F.2d 28, 31 (2d Cir. 1939). General Eisenhower was paid a flat fee for the Book and retained no right to royalties. (Finding of Fact 7) In addition, there is ample evidence that Doubleday paid the expenses surrounding the creation of the Book. Doubleday hired and paid the transcribers, typists and the fact checker of the Book. (Finding of Fact 6). These facts are sufficient to meet the "expense" prong of the test.

Plaintiffs have presented substantial credible evidence that General Eisenhower wrote the book, *Crusade in Europe*, at the "instance and expense" of Doubleday. Accordingly, as a matter of law, the Book is a work for hire. Doubleday, as the employer of the author of the Book, is the proprietor of its copyright.

Defendants make much of the fact that the Book's original copyright registration does not indicate that it was a work for hire. Section 209 of the 1909 Act provides that a certificate of registration shall be prima facie evidence of the facts stated therein. 3 Nimmer on Copyright, § 12.11 at 12-77 n. 2. The facts contained on the registration certificate include that Doubleday is the owner of the copyright and that General Eisenhower is the author of the Book. In contrast, the registration is silent as to whether the Book was written as a work for hire. Section 209 does not require a Court to accept the registration as prima facie evidence of facts absent from the registration. Despite defendants' contentions, the

21

Book's registration certificate does not contradict the Court's conclusion that the Book was a work for hire.

2. Copying

The next inquiry is whether the defendants copied the protected expression in the Book. The fact that the copyright in the derivative work, the *Crusade in Europe* film series, was not renewed does not affect the validity of Doubleday's copyright in the parts of the book used in the films. *Stewart v. Abend*, 495 U.S. 207, 231, 110 S. Ct. 1750, 109 L. Ed. 2d 184 (1990); *Batjac Productions, Inc. v. Goodtimes Home Video Corp.*, 160 F.3d 1223, 1227 (9th Cir. 1998); *see also, Russell v. Price*, 612 F. 2d 1123, 1128 (9th Cir. 1979) ("although derivative work may enter the public domain, the matter contained therein which derives from a work still covered by statutory copyright is not dedicated to the public").

Because direct copying is often difficult to prove, a plaintiff can satisfy the second element of the test for infringement by demonstrating that (a) a defendant had access to the allegedly infringed work and (b) the two works are substantially similar in both idea and expression of that idea. *See Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir.1989). However, where there is an admission of copying, the court need not employ the two part analysis. *Norse v. Henry Holt and Co.*, 991 F.2d 563, 566 (9th Cir. 1993); *Cordon v. Walker*, 1996 WL 672969 *3 (S.D. Cal. 1996). Here defendants admit that they copied the television series *Crusade in Europe* in making its series *Campaign in Europe*. Plaintiffs have submitted ample evidence demonstrating that both the *Crusade* series and *Campaign* videos contained significant portions of the Book. (Finding of Fact 27) Moreover, defendants admit that

22

"there are 'expressions' or 'statements' from the Eisenhower[sic] book (without reference to the Book) which are utilized" in their videos. ( Defendants' memorandum in support of summary judgment or motion to dismiss at 4.)  The Court finds that defendants' admission of copying the television series, which contained significant portions of the Book, is a sufficient admission of copying portions of the protected Book.

Plaintiffs are entitled to summary adjudication of their copyright infringement claim.


B. Lanham Act Claim for Reverse Passing Off

"Section 43(a) of the Lanham Act[4] prohibits the use of false designations of origin and false representations in the advertizing and sale of goods and services." *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994).  Plaintiffs' claim is based on the defendants' sale of *Campaigns*, which they allege is substantially the *Crusade* television series, without proper identification of the television series.  The Act's unfair competition prohibitions extend to "palming off" or "passing off:" the selling of a good or service of one person's creation under the name or mark of another.  *See Lamothe v. Atlantic Recording*, 847 F.2d 1403, 1406 (9th Cir. 1988); *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981).

Express reverse passing off occurs when one party obtains a second party's goods,

---

[4] Section 43(a) of the Lanham Act provides in part: Any person who . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. Codified at 15 U.S.C. § 1125 (a).

removes the second party's name, and markets the product under its own name. *See Summit Mach. Tool Mfg Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1437 (9th Cir. 1993). As a matter of policy, reverse palming off

> "is wrongful because it involves an attempt to misappropriate or profit from another's talents and workmanship. Moreover, in reverse palming off cases, the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product."

*Smith*, 648 F.2d at 607. The practice is also misleading to consumers who are "deprived of knowing the true source of the product and may even be deceived into believing that it comes from a different source." *Id.*

1. Standing

As explained in Part VI, defendants assert that plaintiffs do not have standing to assert a claim under the Lanham Act. Even if the *Crusade* television series is in the public domain, plaintiffs are not precluded from asserting a claim. "The dispositive question is whether the party has a reasonable interest to be protected against false advertising." *Lamothe*, 847 F.2d at 1405. Plaintiffs are the producers and sellers of the *Crusade* video series. They are the holders of the exclusive license to produce and distribute the *Crusade* television series on video. They have a clear interest in preventing defendants from misleading the public in the sale of the *Campaign* videos.

2. Standard for Reverse Passing Off

To prevail on their claim of reverse passing off plaintiffs must demonstrate that defendants' work is a "bodily appropriation" of the television series. *See Cleary*, 30 F.3d at

24

1261. "Bodily appropriation" is the "copying or unauthorized use of substantially the entire item." *Id.* citing *Harper House Inc. v. Thomas Nelson, Inc.*, 889 F2d 197, 205 (9th Cir. 1989).

Defendants admit that they copied the entire *Crusade in Europe* series to create *Campaigns*. They modified *Crusade* by adding a new opening title sequence, chapter-heading sequences, credit page, music and closing. (Findings of Fact 22) They removed approximately twenty minutes of footage relating to the Book. (Findings of Fact 22) This is the sum total of changes made by defendants to the *Crusade* series in making the *Campaign* series. These minor changes are insufficient to avoid liability under the Lanham Act. *See Summit Mach. Tool Mfg Corp.*, 7 F.3d 1434, 1437 (9th Cir. 1993) citing *Roho Inc. v. Marquis* 902 F.2d 356, 359 (5th Cir. 1990) ("A defendant may also be guilty of reverse palming off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name.").

The Court finds that defendants have copied substantially all of the television series. The Court also finds that defendants failure to identify the television series and the Book is misleading to the public; it gives the false impression that the series contains only the work of those listed in the credits even though the television series was produced by Fox and Time and significant portions of the Book are used verbatim.[5] The Court concludes that

---

[5] The Court observes that in response to one of plaintiffs' uncontroverted facts, defendants state that Anderson testified in his deposition that he put stickers stating "Contains Film Footage from the Previously Released *Crusade in Europe*" on some of the videos because he did not want a consumer to purchase the *Campaign* series if the customer had already purchased the *Crusade* series. Defendants did not provide the portion of Anderson's deposition containing this statement. Although not supported by proper evidence, this statement confirms the Court's conclusion that the two video series are similar enough to cause confusion among

defendants' series is a "bodily appropriation" of the television series.  Plaintiffs are entitled
to summary adjudication on their claim for reverse passing off.


C. Unfair competition

Plaintiffs state that they are entitled to summary adjudication of their claim for unfair
competition under California law.  They state that the same facts demonstrating a violation
of the Lanham Act are sufficient to demonstrate a violation of California Business &
Professional Code §§ 17200 and 17500.  *See Summit Technology, Inc. v. High-Line Medical
Instruments Co.*, 933 F. Supp 918 (C.D. Cal. 1996) (holding that facts supporting a party's
claim for reverse passing off also support claims for unfair competition).  Because the
ultimate test under both is "whether the public is likely to be deceived or confused" the
Court's finding that defendants' actions are misleading under the Lanham Act controls the
resolution of the unfair competition claim.  *See Cleary v. News Corporation*, 30 F. 3d 1255,
1262-63 (9th Cir. 1994) ("actions pursuant to California Business and Professions Code §
17200 are 'substantially congruent' to claims made under the Lanham Act").  Plaintiffs are
entitled to summary adjudication of their claims for unfair competition under California law.

Because summary adjudication on each of plaintiffs' claims is proper, they are entitled
to summary judgment.

D. Defendants' Counterclaims for Declaratory Relief and Unfair Competition

_____

consumers.

26

The Court's conclusion that Doubleday's copyright in the book is valid controls the resolution of defendants' counterclaims for declaratory relief and unfair competition. The Court grants summary judgment in favor of Fox, SFM, New Line and Random House on defendants' counterclaims.

## VI. Defendant's Motion for Summary Judgment or Motion to Dismiss

Defendants moved for summary judgment on plaintiffs' claims for copyright infringement, reverse passing off under the Lanham Act and unfair competition under California law. In the alternative, defendants' moved to dismiss plaintiffs claims. Both motions are based on defendants' contention that plaintiffs do not have standing.

First, defendants allege that Doubleday is not the proprietor of the copyright to the Book. Defendants argue that because Doubleday is not the proper holder of the Book's copyright, it cannot state a claim for copyright infringement. The Court's conclusion in Part V.(A). controls the resolution of this issue on defendants' motions.

Next, Defendants contend that plaintiffs do not have standing to bring a Lanham Act claim on two grounds. First, because Time Inc. registered the original *Crusade* series, defendants assert that Time is the only proper plaintiff. Second, defendants assert that because Time's registration was not renewed, the series became part of the public domain. Accordingly, defendants contend that plaintiffs cannot allege unfair competition claims resulting from defendants' use of elements of a public domain work. Again, the Court's resolution in Part V.(B). controls.

27

Defendants' motion for summary judgment or, in the alternative, to dismiss is denied.

## VII. Conclusion

The Court grants summary judgment for plaintiffs on their claims and for the counterdefendants on the counterclaims. Defendants' motion for summary judgment and alternative motion to dismiss are denied.

IT IS SO ORDERED.

January 4, 2000

Florence-Marie Cooper
United States District Judge